UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
ERNST BARTLOME, Individually and On        :
Behalf of All Others Similarly Situated,   :
                                           :          CASE NO.: 1:19-cv-02657-VSB
                                           :
              Plaintiff,                   :
                                           :
      -against-                            :
                                           :
OSIRIS THERAPEUTICS, INC., PETER           :
FRIEDLI, THOMAS J. KNAPP, WILLI            :
MIESCH, and CHARLES A. REINHART, III,      :
                                           :
              Defendants.                  :
                                           :
                                           :
-------------------------------------- X

### AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

        Plaintiff Ernst Bartlome ("Plaintiff"), by and through his attorneys, alleges the following

upon information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon

personal knowledge:

### NATURE OF THE ACTION

        1.      This is action is a class action brought by Plaintiff on behalf of himself and all other

similarly situated stockholders of Osiris Therapeutics, Inc. ("Osiris" or the "Company") against

Osiris and the members of the Company's board of directors (collectively referred to as the

"Board" or the "Individual Defendants" and, together with Osiris, the "Defendants") for their

violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934

("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States

Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. § 240.14d-9(d) ("Rule 14d-

9").  Plaintiff's claims arise in connection with the proposed tender offer by Smith & Nephew plc ("Smith & Nephew") through Papyrus Acquisition Corp. ("Purchaser"), a direct subsidiary of Smith & Nephew Consolidated, Inc. ("Parent") and an indirect wholly owned subsidiary of Smith & Nephew, to acquire all of the issued and outstanding shares of Osiris (the "Tender Offer").

2.      On March 12, 2019, Osiris entered into an Agreement and Plan of Merger (the "Merger Agreement") by and among the Company, Parent, Purchaser and, solely for the purposes of Section 7.02 and Article XI thereto, Smith & Nephew, pursuant to which Purchaser will merge with and into the Company, with the Company continuing as the surviving corporation and a wholly owned subsidiary of Parent (the "Proposed Transaction").

3.      Under the terms of the Merger Agreement, each stockholder of Osiris common stock will be entitled to receive $19.00 in cash (the "Offer Price").

4.      On March 20, 2019, in order to convince Osiris' public common stockholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC.

5.      In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) financial projections for Osiris; and (ii) the valuation analyses performed by Osiris' financial advisor, Cantor Fitzgerald & Co. ("Cantor Fitzgerald"), in support of its fairness opinion.

6.      The Tender Offer is scheduled to expire at 12:01 a.m. Eastern Time, on April 17, 2019 (the "Expiration Time").  It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's stockholders prior to the Expiration Time so they can properly determine whether to tender their shares.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.  Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Osiris' public common stockholders sufficiently in advance of the Expiration Time or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state."  *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court."  *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact

business in this District.  Indeed, Osiris' common stock trades on the Nasdaq, which is also headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Osiris common stock.

12.     Defendant Osiris is a Maryland corporation with its principal place of business located at 7015 Albert Einstein Drive, Columbia, Maryland 21046.  The Company researches, develops, manufactures, and commercializes regenerative medicine products intended to improve the health and lives of patients and lower overall healthcare costs.  Osiris' common stock trades on the Nasdaq under the ticker symbol "OSIR."

13.     Defendant Peter Friedli is, and has been at all relevant times, a director of the Company.  Defendant Friedli is also a co-founder of the Company and currently serves as Chairman of the Board.

14.     Defendant Thomas J. Knapp is, and has been at all relevant times, a director of the Company.

15.     Defendant Willi Miesch is, and has been at all relevant times, a director of the Company.

16.     Defendant Charles A. Reinhart, III is, and has been at all relevant times, a director of the Company.

17.     The defendants identified in paragraphs 13 through 16 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Osiris, the "Defendants."

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Osiris (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19.     This action is properly maintainable as a class action because:

    a) The Class is so numerous that joinder of all members is impracticable.  As of the close of business on March 19, 2019, there were 34,528,289 shares of Osiris common stock issued and outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

    b) there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

        i.   whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder;

        ii.  whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(e) of the Exchange Act;

        iii. whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 20(a) of the Exchange Act; and

        iv.  whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares in the Tender Offer based on the

materially incomplete and misleading Proxy.

c) Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class;

d) the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests;

e) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

f) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company and the Proposed Transaction**

20.    Osiris researches, develops, manufactures, and commercializes regenerative medicine products intended to improve the health and lives of patients and lower overall healthcare costs.  The Company has achieved commercial success with products in wound care, orthopedics,

and sports medicine, including the Grafix product line, Stravix, BIO4, and Cartiform. Osiris continues to advance its research and development ("R&D") by focusing on innovation in regenerative medicine, including the development of bioengineered stem cell and tissue-based products.

21.     Smith & Nephew is a British multinational medical equipment manufacturing company headquartered in London, United Kingdom. Smith & Nephew is an international producer of advanced wound management products, arthroscopy products, trauma and clinical therapy products, and orthopaedic reconstruction products.

22.     On March 12, 2019, the Board caused the Company to enter into the Merger Agreement.

23.     Pursuant to the terms of the Merger Agreement, the Company's current stockholders only expect to receive $19.00 in cash for each share of Osiris common stock they own.

24.     On March 12, 2019, the Company issued a press release announcing the Proposed Transaction, which stated in relevant part:

### Osiris Therapeutics, Inc. Enters Agreement to be Acquired by Smith & Nephew plc

COLUMBIA, MARYLAND, Mar. 12, 2019 — Osiris Therapeutics, Inc. (NASDAQ: OSIR), a regenerative medicine company focused on developing and marketing products for wound care, orthopedics, and sports medicine, today announced that it has entered into an agreement and plan of merger with Smith & Nephew plc pursuant to which Smith & Nephew will acquire Osiris for $19.00 per share in cash, a total of approximately $660.5 million in cash. This offer represents a 37% premium to the company's 90-day volume-weighted average stock price. The transaction was unanimously approved by the Boards of Directors of both companies.

Peter Friedli, Chairman of the Board and co-founder of Osiris, said, "This is a very good outcome for Osiris' shareholders. The Board

concluded unanimously, after taking into account the requirements needed to take the business to the next level, that entering into this agreement represents the best way to maximize value for our stockholders." Mr. Friedli added, "I am immensely proud of the business we have built from our research into advanced regenerative technologies. I believe Smith & Nephew is the right home for Osiris and will allow our products to reach more customers, helping to restore quality of life for more patients."

"This agreement reflects the significant value that the Osiris team has generated for our shareholders under Peter Friedli's leadership. We believe this transaction will also benefit our customers, employees, and partners," said Samson Tom, President and Chief Executive Officer of Osiris.

Completion of the transaction is expected in the second quarter of 2019, pending the successful completion of the tender offer and all other closing conditions. Osiris' employees are expected to join Smith & Nephew on completion. Until that time, Osiris will continue to operate as a separate and independent company.

Cantor Fitzgerald & Co. rendered a fairness opinion to the Board of Directors of Osiris in connection with the transaction. Hogan Lovells US LLP is acting as legal counsel for Osiris.

**Transaction Details**

Under the terms of the agreement and plan of merger, Smith & Nephew has formed an acquisition subsidiary, Papyrus Acquisition Corp. ("Purchaser"), that will commence a tender offer no later than April 2, 2019 to purchase all outstanding shares of Osiris for $19.00 per share in cash, and Osiris will file a recommendation statement containing the unanimous recommendation of the Osiris Board that Osiris stockholders tender their shares to Smith & Nephew. Following the completion of the tender offer, Smith & Nephew expects to promptly consummate a merger of Purchaser and Osiris in which shares of Osiris that have not been purchased in the tender offer will be converted into the right to receive the same cash price per share as paid in the tender offer.

The tender offer and the merger are subject to customary closing conditions, including the tender of at least a majority of the outstanding Osiris shares on a fully diluted basis and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. The merger agreement includes customary termination provisions for both Osiris and Smith &

Nephew, including a right for either party to terminate if the transactions have not been completed by December 12, 2019.

The merger agreement provides that, in connection with the termination of the merger agreement under specified circumstances, including termination by Osiris to accept a superior proposal, Osiris will be required to pay to Smith & Nephew a fee equal to $18,682,450.

Smith & Nephew plc (LSE: SN, NYSE: SNN) is making a separate announcement regarding the transaction to its investors today.

**The Recommendation Statement Omits Material Information**

25.     On March 20, 2019, Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC.  The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Recommendation Statement misrepresents or omits material information that is necessary for Osiris' public common stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.

26.     First, the Recommendation Statement fails to fully disclose Osiris' financial projections.

27.     Specifically, the Recommendation Statement provides several non-GAAP (generally accepted accounting principles) financial metric for Osiris—EBITDA and Adjusted EBITDA—but fails to disclose the line-item projections for the specific metrics, adjustments, and/or inputs that are used to calculate the Non-GAAP financial measure or provide a reconciliation of the Non-GAAP measures to the most directly comparable GAAP financial measure, such as Net Income.  *See* Recommendation Statement at 30.

28.    The Recommendation Statement defines EBITDA as "earnings before interest, taxes, depreciation, amortization and stock-based compensation," but fails to disclose Osiris' projected: (i) earnings; (ii) interest; (iii) taxes; (iv) depreciation; and (v) amortization and stock based compensation.  *Id.*

29.    Similarly, the Recommendation Statement defines Adjusted EBITDA as "EBITDA adjusted to exclude extraordinary professional fees related to the restatement of the Company's 2015 interim financial statements and the restatement of the Company's 2014 financial statements and the related legal proceedings," but, as mentioned above, fails to disclose the line-item inputs comprising Osiris' projected EBITDA for the years 2019 through 2022.  Such information is particularly material in light of the fact that Osiris' Adjusted EBITDA was utilized by Cantor Fitzgerald in several of its valuation analyses, including the *Selected Publicly Traded Companies Analysis*.  *See* Recommendation Statement at 25-26 (comparing Osiris' Adjusted EBITDA for calendar year 2019).

30.    The failure to disclose the line-item projections that compose Osiris' EBITDA and Adjusted EBTIDA renders the Recommendation Statement materially incomplete and misleading because non-GAAP numbers are inherently misleading.  Contrary to GAAP metrics, non-GAAP figures are not standardized and, consequently, can be manipulated and easily taken out of context. Because non-GAAP measures, such as EBITDA, can be measured in different ways, it is inherently misleading when it is not taken in context with GAAP figures, such as Net Income or Operating Income, or reconciled alongside its line-items inputs.

31.    Indeed, the footnotes that detail the inputs and assumptions underlying Osiris' projected EBITDA and Adjusted EBITDA concede that non-GAAP metrics are inherently misleading for this exact reason:

(2) EBITDA is defined as earnings before interest, taxes, depreciation, amortization and stock based compensation. *EBITDA is a non-GAAP financial performance measure and **should not be used as an alternative to net income** as an indicator of operating performance.*

(3) Adjusted EBITDA is EBITDA adjusted to exclude extraordinary professional fees related to the restatement of the Company's 2015 interim financial statements and the restatement of the Company's 2014 financial statements and the related legal proceedings. *Adjusted EBITDA is a non-GAAP financial performance measure and **should not be used as an alternative to net income** as an indicator of operating performance.*

*Id.* at 30 (emphasis added).

32. Furthermore, and also by Defendants' own admission, the financial projections disclosed in the Recommendation Statement are materially incomplete and misleading because of the failure to reconcile the above-mentioned non-GAAP financial metrics to GAAP metrics, specifically Osiris' projected ***Net Income*** for the calendar years 2019 through 2022.

33. Numerous courts have championed the importance of management based financial projections because a company's management has unique insight into their firm's future that the market does not. Stockholders cannot hope to replicate management's inside view of a company's prospects. The established case law shows the importance (and, hence, materiality) of financial projections to stockholders' decision-making.

34. If a Recommendation Statement discloses financial projections and valuation information, such **projections must be complete and accurate**. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—**but it may not choose half-truths**. Accordingly, Defendants have disclosed some of the projections relied upon by Cantor Fitzgerald, but have omitted the

above-mentioned projections.  Thus, their omission renders the projections disclosed on page 30 misleading.

35.     Second, the Recommendation Statement describes Cantor Fitzgerald's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Cantor Fitzgerald's fairness opinion and analyses fails to include key inputs and assumptions underlying the analyses.  Without this information, as described below, Osiris' stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, *if any*, to place on Cantor Fitzgerald's fairness opinion in determining whether to tender their shares in the Tender Offer.  This omitted information, if disclosed, would significantly alter the total mix of information available to Osiris' common stockholders.

36.     With respect to Cantor Fitzgerald's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following key components used in the analysis: (i) the implied terminal value of the Company; (ii) the inputs and assumptions underlying the calculation of the terminal revenue multiples of 3.0x to 4.0x; and (iii) the inputs and assumptions underlying the calculation of the discount rate range of 10.5% to 12.5%.  *See* Recommendation Statement at 27.

37.     These key inputs are material to Osiris' stockholders, and their omission renders the summary of Cantor Fitzgerald's *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow ("DCF") analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the

appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars…* This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**.* The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Osiris stockholders cannot evaluate for themselves the reliability of Cantor Fitzgerald's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the illustrative present value per share reference ranges reflect the true value of the Company or was the result of Cantor Fitzgerald's unreasonable judgment, and make an informed decision regarding whether to tender their shares in the Tender Offer.

38.    With respect to Cantor Fitzgerald's *Selected Publicly Traded Companies Analysis*, the Recommendation Statement fails to disclose the individual valuation multiples Cantor Fitzgerald calculated for each of the companies considered in the analysis.  *See* Recommendation Statement at 25-26.  A fair summary of the *Selected Publicly Traded Companies Analysis* requires the disclosure of the individual valuation multiples for each company utilized; merely providing the low, high, mean, and median equity values that a banker calculated is insufficient, as stockholders are unable to assess whether the banker utilized reasonable comparable companies, or, instead, selected unreasonable companies in order to make the Offer Price appear more

favorable.  Additionally, the summary of the analysis states that Cantor Fitzgerald was required to omit data for three companies, but fails to identify which three companies were omitted from the analysis.  *See* Recommendation Statement at 26 ("Financial data of the selected companies were based on publicly available research analysts' estimates, public filings and other publicly available information. Calendar year 2020 (estimated) revenue data was not publicly available for two of the selected companies, and calendar year 2019 (estimated) Adjusted EBITDA data was not publicly available for one of the selected companies.").  The failure to disclose such information further precludes Osiris stockholders from evaluating for themselves the reliability of Cantor Fitzgerald's *Selected Publicly Traded Companies Analysis* and the fairness of the Offer Price, and make an informed decision regarding whether to tender their shares in the Tender Offer.

39.     Similarly, with respect to Cantor Fitzgerald's *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the individual valuation multiples Cantor Fitzgerald calculated for each of the companies considered in the analysis.  *See* Recommendation Statement at 26-27.  For the same reasons mentioned above, the failure to disclose the individual valuation multiples for each of the 16 transactions that were reviewed and analyzed renders the summary of the analysis materially incomplete and misleading.  Additionally, the Recommendation Statement discloses that the LTM Adjusted EBITDA data was not available for a *majority* of the transactions that were considered, but fails to disclose which transactions were omitted from the analysis.  *See* Recommendation Statement at 27 ("LTM Adjusted EBITDA data was not available for nine of the selected transactions.").  The failure to disclose such information further prevents Osiris stockholders from evaluating for themselves the reliability of Cantor Fitzgerald's *Selected Precedent Transactions Analysis* and the fairness of the Offer Price, and make an informed decision regarding whether to tender their shares in the Tender Offer.

40.     Defendants' failure to provide the foregoing material information renders the statements in the Recommendation Statement false and/or materially misleading.

41.     In sum, the omission of the above-referenced information renders the Recommendation Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Expiration Time, Plaintiff will be unable to make an informed decision concerning whether to tender his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violation of Section 14(e) of the Exchange Act)**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

44.     Defendants have issued the Recommendation Statement with the intention of soliciting Osiris stockholders to tender their shares.  Each of the Defendants reviewed and authorized the dissemination of the Recommendation Statement, which fails to provide material information regarding: (i) financial projections for Osiris; and (ii) the valuation analyses performed by Cantor Fitzgerald in support of its fairness opinion.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants,

by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).  The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

46.     The Individual Defendants were privy to and had knowledge of the projections for the Company and the details concerning Cantor Fitzgerald's valuation analyses.  The Individual Defendants were reckless in choosing to omit material information from the Recommendation Statement, despite the fact that such information could have been disclosed without unreasonable efforts.

47.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision regarding whether to tender their shares if such misrepresentations and omissions are not corrected prior to the Expiration Date.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act
and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.   Specifically, Section

14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

50. SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

51. In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

52. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.

53. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, Defendants undoubtedly reviewed the omitted material information in connection with approving the Proposed Transaction.

54. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision

regarding whether to tender their shares if such misrepresentations and omissions are not corrected prior to the Expiration Date.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT III**

**(Against all Defendants for Violations of Section 20(a) of the Exchange Act)**

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Osiris within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Osiris, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

18

violations alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Tender Offer. They were thus directly involved in preparing the Recommendation Statement.

59.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e) and 14(d)(4) and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

62.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: April 9, 2019                              **MONTEVERDE & ASSOCIATES PC**

                                         By: _/s/ Juan E. Monteverde_____
                                              Juan E. Monteverde (JM-8169)
                                              The Empire State Building 350 Fifth
                                              Avenue, Suite 4405 New York, NY 10118
                                              Tel:(212) 971-1341
                                              Fax:(212) 202-7880
                                              Email: jmonteverde@monteverdelaw.com

                                              *Attorneys for Plaintiff*